**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LETTY RUTT** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **No. 13-4559** |
| **CITY OF READING, PA, et. al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**STENGEL, J.**                                                    **OCTOBER 21, 2014**

Letty Rutt, plaintiff, filed this civil action against the City of Reading, Jackie
Daniswerski and Sandy Hummel claiming violations of the Family Medical Leave Act
(FMLA) and the Americans with Disabilities Act as well as wrongful termination in
violation of state law. Defendants have moved to dismiss Ms. Rutt's second amended
complaint. For the reasons that follow, I will grant the motion in part.

**II.     BACKGROUND**

The City of Reading formerly employed Ms. Rutt as a records clerk in the police
department. Ms. Daniswerski and Ms. Hummel supervised Ms. Rutt. Ms. Rutt sustained
several injuries in 2010 causing her to be absent from work. On February 14, 2012, Ms.
Daniswerski and Ms. Hummel advised Ms. Rutt that she would be terminated for
excessive absences, but Ms. Rutt's union representative convinced defendants to reverse
their decision. Defendants requested that Ms. Rutt complete an FMLA application, but
did not permit her to return to work. Over the next year, Ms. Rutt continued to submit

FMLA paperwork and tried to return to her position at the police department. Defendants reinstated Ms. Rutt on February 1, 2013. On June 4, 2013, Ms. Daniswerksi denied Ms. Rutt's request for work limitations telling Ms. Rutt that "with medical restrictions we cannot allow you to work."

Ms. Rutt filed her lawsuit on August 7, 2013 claiming violations of the FMLA and ADA. I dismissed her first complaint without prejudice because Ms. Rutt failed to plead an adverse employment action. Ms. Rutt's first amended complaint set forth a convoluted string of facts that were so unintelligible that I granted defendants' motion for a more definitive statement. In granting defendants' motion, I warned plaintiff's counsel that failure to rectify his pleading errors would result in dismissal of the second amended complaint with prejudice.

Ms. Rutt's second amended complaint is a marginal improvement. Indeed, some of the counts may have merit. Therefore, I will allow a small portion of the complaint to proceed to discovery.

## III.    STANDARD OF REVIEW

A complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint need not contain detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2). Id. at 1965;

2

Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005). A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, Erickson v. Pardus, 551 U.S. 89 (2007), and all reasonable inferences permitted by the factual allegations, Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff. Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007). The court is not, however, "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (quotations and citations omitted). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman,  38 F.3d 1380, 1384 n. 2 (3d Cir.1994) (citations omitted). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiffs' claim is "plausible on its face," a complaint will survive a motion to dismiss. Twombly, 127 S. Ct. at 1965, 1974; Victaulic Co. v. Tieman, 499 F.3d 227, 234-35 (3d Cir. 2007). The plausibility determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009))

### III.    DISCUSSION

### A.  Family Medical Leave Act Claims

Ms. Rutt pleads eight counts of FMLA interference in her complaint.[1] The FMLA prohibits an employer's interference with or retaliation for an employee's exercise of their rights under the act. 29 U.S.C. § 2615.[2] To survive the motion to dismiss, Ms. Rutt must plausibly plead that she was an eligible employee and that the defendants denied her FMLA benefits. Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 312 (3d Cir. 2012) (citing Callison v. City of Philadelphia, 430 F.3d 117, 119 (3d Cir. 2005). In addition to refusing leave, discouraging an employee from using FMLA leave may also serve as grounds for an interference claim. Sommer v. The Vanguard Grp., 461 F.3d 397, 399 (3d Cir. 2006) (citing 29 C.F.R. §825.220(b)).

Count I claims that defendants interfered with Ms. Rutt's FMLA rights during the February 14, 2012 meeting. Failure to reinstate an employee after the conclusion of FMLA leave may give rise to an interference claim. 29 C.F.R. § 825.214; Model Civ. Jury Instr. 3rd Cir. 10.1.1 (2011). At the February 14 meeting, defendants reversed their decision to terminate Ms. Rutt, requested an FMLA application and told Ms. Rutt that she

---

[1] Some of the counts are labeled as FMLA retaliation claims; however, I will construe these claims as FMLA interference. *See infra* note 5.

[2] The statute provides in relevant part:

  (a) Interference with rights

    (1) Exercise of rights

      It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

    (2) Discrimination

      It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C.A. § 2615

could not return to work.[3] At this point, defendants could not have interfered with Ms.

Rutt's right to reinstatement because there are no allegations that Ms. Rutt had taken any

FMLA leave prior to the February 14 meeting. Furthermore, by requesting an FMLA

application instead of terminating Ms. Rutt, defendants appear to encourage Ms. Rutt to

invoke her FMLA rights – not interfere with them. I fail to see how the defendants'

actions could reasonably have discouraged Ms. Rutt from using FMLA leave. I will

dismiss Count I.

In Counts II and V, Ms. Rutt maintains that defendants' failure to timely respond

to her requests for FMLA leave in February and March of 2012 caused actionable harm.

When an employee requests FMLA leave…, the employer must notify the employee of

the employee's eligibility to take FMLA leave within five business days…." 29 C.F.R. §

825.300(b)(1). "Failure to follow the notice requirements … may constitute an

interference with … FMLA rights." § 825.300(e). In order to maintain an interference

claim based on the employer's failure to provide notice, Ms. Rutt must establish that

defendants' failure prevented her from taking advantage of the FMLA's job protection

provisions. *See* Lupyan v. Corinthian Colleges Inc., 761 F.3d 314 (3d Cir. 2014) (since

defendant did not inform plaintiff that her leave was under the FMLA, plaintiff was

unaware of the requirement that she had to return to work within twelve weeks or be

subject to termination); Conoshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 143

(3d Cir. 2004) (defendant's failure to give notice prevented plaintiff from structuring his

---

[3] It is not clear from the allegations whether defendants requested an FMLA application to retroactively cover Ms. Rutt's excessive absences or for prospective leave. *See* 29 CFR § 825.301(d) (providing for retroactive designation of leave).

leave to avail himself of the statute's job protection). Here, Ms. Rutt admits that she returned to her position in February 2013. Therefore, it is implausible that she was prejudiced by defendants' failure to timely respond to her FMLA application.[4] I will dismiss Counts II and V.

Counts III and VI[5] assert that defendants interfered with Ms. Rutt's FMLA rights by failing to restore her to her position after FMLA leave. An employee on FMLA leave has a right to be restored to her previous position after she returns from leave. 29 U.S.C. §2614(a)(1). Not permitting an employee to return to work after FMLA leave may give rise to an interference claim. 29 C.F.R. § 825.214; Model Civ. Jury Instr. 3rd Cir. 10.1.1 (2011). However, an employer is not required to restore an employee to her position if the employee is unable to perform an essential function of her job. 29 CRF § 825.216(c); *See* <u>Rinehimer v. Cemcolift, Inc.</u>, 292 F.3d 375, 384 (3d Cir.2002) ("The FMLA does not require an employer to provide a reasonable accommodation to an employee to facilitate his return to the same or equivalent position at the conclusion of his medical leave."). According to Count III, defendants did not reinstate Ms. Rutt on March 8, 2012 because she could not perform some of the physical functions of her job. Compl. ¶ 33. On the other hand, Count VI alleges that Ms. Rutt was certified to return to work without limitation on November 8, 2012. Compl. ¶ 57. Defendants did not violate the FMLA by

---

[4] It is also implausible that Ms. Rutt applied for additional FMLA leave during the same time she claims she was trying to return to work. It is more likely that defendants requested fitness for duty certifications which would not support an interference claim. *See* 29 C.F.R. § 825.312.

[5] I note that Counts VI and VII are labeled FMLA retaliation claims; however, not being restored to the same or equivalent position is an interference claim. *See* <u>Dilorio v. Manor</u>, 319 Fed.Appx. 115, 117-8 (3d Cr. 2009). Counsel's belief that the characterization of these claims depends on Ms. Rutt's employment status is concerning. These counts should proceed to discovery on an interference theory only.

failing to accommodate Ms. Rutt on March 8, 2012, but defendants may have interfered with Ms. Rutt's FMLA rights by failing to reinstate her on November 8.[6] Accordingly, I will dismiss Count III, but Count VI will proceed to discovery.

I will dismiss Count IV because it does not plead any recognizable cause of action. Ms. Rutt applied for and received unemployment compensation in March 2012. Count IV includes no other allegations. Ms. Rutt's receipt of unemployment compensation is evidence that she was terminated. However, this count includes no other facts suggesting that defendants terminated Ms. Rutt because she requested FMLA leave. Without additional allegations, the receipt of unemployment compensation does not plausibly establish an FMLA violation.

According to Count VII, defendants reinstated Ms. Rutt in February 2013,[7] but assigned Ms. Rutt to work a different shift than her previous position. "The employee is ordinarily entitled to return to the same shift or the same or an equivalent work schedule." 29 C.F.R. § 825.215. Although it is not clear to what shift defendants assigned Ms. Rutt, it is clear that the shift was less desirable. For the purpose of the motion to dismiss, Ms. Rutt pleaded enough facts to show that she was not restored to the same or equivalent position.

---

[6] According to the complaint, Ms. Rutt was last employed on March 13, 2012. Eight months then elapse between her last date of employment and the events detailed in count six. There is no explanation of her employment status or her medical status during this time. Obviously, this places Ms. Rutt's FMLA eligibility in doubt. *See* 29 U.S.C. § 2611 (2) (an eligible employee is one who worked for at least 1,2500 hours of service with such employer during the previous 12-month period). However, it is plausible that defendants required a fitness for duty certification. *See supra* note 4. Defendants could delay restoration until the certification is provided. 29 CFR § 825.313 (d). Thus it is possible that Ms. Rutt's still enjoyed the protections of the FMLA at this late date.

[7] Ms. Rutt's eligibility for FMLA at this late date is plausible. *See supra* note 6.

Count VIII, Ms. Rutt's last FMLA claim, is defective for two reasons. First, Ms. Rutt was not an eligible employee on June 4, 2013 when the alleged violation occurred. An eligible employee must work at least 1,250 hours during the previous 12 months. 29 U.S.C. § 2611 (2).[8] Ms. Rutt admits she did not work from March 13, 2012 until February 2013, Compl. ¶¶ 40 - 61; therefore, Ms. Rutt worked at most 704 hours in the year preceding the alleged violation.[9] Second, Count VIII asserts that defendants denied Ms. Rutt's requests for work limitations. These facts support an ADA discrimination claim – not an FMLA claim. Ms. Rutt recites the same facts to establish an ADA claim in Count XVII. Accordingly, Count VIII is duplicative and properly dismissed. *See* Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 626 (E.D. Pa. 2010) (recognizing the court's authority to dismiss duplicative counts).

## B.  Americans with Disabilities Act Claims

Ms. Rutt attempts to plead nine counts of ADA discrimination. The Americans with Disabilities Act (ADA) prohibits employers from discriminating against a qualified employee on the basis of disability. 42 U.S.C. § 12112(a). To establish a prima facie case of discrimination, Ms. Rutt must allege facts showing (1) [s]he is disabled as defined by the ADA; (2) she is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) she has suffered an otherwise adverse

---

[8] The statute also requires that the employee be employed by the employer for 12 months. 29 U.S.C. § 2611 (2). However, such time does not need to be consecutive. 29 C.F.R. § 825.110(b). Therefore, Ms. Rutt's entire employment starting in 2006 is counted toward her eligibility under the FMLA.

[9] Ms. Rutt alleges that she worked an eight hour shift. Second Am. Compl ¶ 61. Therefore, it is a reasonable and fair inference that Ms. Rutt worked a total of forty hours over a five day work week. Thus over a span of 17 weeks and 3 days, the most Ms. Rutt could have worked is 704 hours. In order to be eligible for benefits, Ms. Rutt would have had to work over 14 hours a day within the same period which is patently unreasonable.

employment action as a result of discrimination. *E.g.*, Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999). An adverse employment action includes, *inter alia*, failure to make reasonable accommodations. Colwell v. Rite Aid Corp., 602 F.3d 495, 504 (3d Cir. 2010) (citing Williams v. Phila. Hous. Auth. Police Dep't., 380 F.3d 751, 761 (3d Cir.2004)).

An employer is liable for failing to make reasonable accommodations when: "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." Colwell, 602 F.3d at 504 (citing Williams, 380 F.3d at 772). Importantly, however, an employer does not need to create a position which does not exist in order to accommodate a disabled employee. Turner v. Hershey Chocolate U.S., 440 F.3d 604, 614 (3d Cir. 2006) (citing Burskirk v. Apollo Metals, 307 F.3d. 160, 169 (3d Cir. 2002)). The employer's duty to engage in the interactive process is triggered by the employee's clear and direct request for a reasonable accommodation. Colwell, 602 F.3d at 506.

Count IX alleges no facts supporting an ADA discrimination claim. The only factual allegation in this count is that Ms. Rutt was diagnosed by various doctors. Ms. Rutt does not plead the diagnosis. The remainder of the allegations are conclusions of law which I need not accept as true for purpose this motion to dismiss. Ms. Rutt alleges not one fact which remotely suggests that defendants discriminated against her. I will dismiss Count IX.

9

Ms. Rutt persists in the mistaken belief that the protections afforded by the ADA are coextensive with the FMLA. Pleading ADA discrimination,[10] Counts X, XI, XIII, XIV and XVI recite the same facts which support Ms. Rutt's FMLA interference claims in Counts I, II, IV, V and VII. Contrary to Ms. Rutt's contentions, FMLA leave is not a reasonable accommodation. *See* Trevino v. United Parcel Serv., 3:08-CV-0889-B, 2009 WL 3423039 (N.D. Tex. Oct. 23, 2009) (citing Navarro v. Pfizer Corp., 261 F.3d 90, 101 (1st Cir. 2001); Vice v. Blue Cross & Blue Shield of Oklahoma, 113 Fed. Appx. 854, 857 (10th Cir. 2004)) ("FMLA leave is not a reasonable accommodation under the ADA; rather, it is a right enforceable under a separate statutory provision."); *See also,* Lowenstein v. Catholic Health East, 820 F. Supp. 2d 639, 647 (E.D. Pa. 2011) (noting that while defendants' failure to consider plaintiff's FMLA request would not support an ADA claim, plaintiff's request for additional sick days following FMLA leave is a request for a reasonable accommodation). Furthermore, a request for FMLA leave is not alternatively a request for a reasonable accommodation.[11] Other than the FMLA

---

[10] As further evidence that counsel simply does not understand the law, he has labeled these counts ADA interference claims. ADA interference claim requires proof that defendants coerced, intimidated, threatened or interfered with an employee exercising her rights under the act. 42 U.S.C. §12203(b); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 570 (3d Cir. 2002). An employee exercises her rights under the ADA by requesting a reasonable accommodation. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 191 (3d Cir. 2003) ("The right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC…"). In comparing an interference claim to a discrimination claim, the timing of defendants' conduct is key. When a defendant takes action to prevent an individual from requesting a reasonable accommodation, the defendant is liable for ADA interference. On the other hand, a defendant who fails to respond to a request for reasonable accommodation can be held accountable for ADA discrimination. In each of Ms. Rutt's counts of ADA interference, she claims that defendants failed to consider reasonable accommodations. Accordingly, I will construe these counts as discrimination claims.

[11] By requesting FMLA leave an employee is alerting her employer that she has "a serious health condition that makes the employee **unable to perform the functions of the position** of such employee." 29 U.S.C. § 2612 (emphasis added). On the other hand, an employee who requests a reasonable accommodation must show that they "**can perform the essential functions of the employment position**."  42 U.S.C. § 12111 (emphasis added). Thus, an employee who requests leave does not clearly communicate to her employer that she is disabled and desires an

allegations, Ms. Rutt alleges no other facts which I can construe as a request for a reasonable accommodation.[12] Therefore, I will dismiss Counts X, XI, XIII, XIV and XVI.[13]

On the other hand, Counts XII, XV and XVII[14] demonstrate how the ADA can complement FMLA leave. The ADA may require employers to make reasonable accommodations to employees returning from FMLA leave. 29 C.F.R. § 825.702 (d). Employers who require employees to be 100% healed before returning from FMLA leave may violate the ADA. Hohider v. United Parcel Serv., Inc., 574 F.3d 169, 195 (3d Cir. 2009). Thus, an employer may need to consider a light duty assignment. See Turner v. Hershey Chocolate U.S., 440 F.3d 604, 609 (3d Cir. 2006) ("[W]hether these restrictions would prevent Turner from performing the essential functions of her job with reasonable accommodation is a factual question for the jury."). Ms. Rutt alleges that she requested a light duty assignment on March 8, 2012, October 19, 2012, and June 4, 2013. According

---

accommodation. See Colwell v. Rite Aid Corp., 602 F.3d 495, 506 (3rd Cir 2010) (the employee must make clear that she wants an accommodation).

[12] In each of these counts, Ms. Rutt alleges, "Defendant City failed to accommodate Plaintiff including, but not limited to, refusing to consider alternative measures of reasonable accommodation or engaging in an interactive process." Compl ¶¶ 77, 79, 86, 97 and 102 (citing 42 U.S.C. § 12111(9)-(10)). This is a conclusion of law which I need not accept as true.

[13] Count XVI claims relief under the ADA for failing to reinstate Ms. Rutt to the position she held before taking leave. This is clearly an FMLA claim. Nonetheless, I assume, without deciding, that an employee who takes leave under the ADA may have a claim for disability discrimination if she is not returned to the same position when she returns from leave. Here, Ms. Rutt does not allege that she requested leave as a reasonable accommodation. It follows then that the ADA did not protect her right to reinstatement.

[14] Ms. Rutt labels Counts XV through XVII ADA retaliation claims. The ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 USCA § 12203(a). These allegations are not retaliation claims because Ms. Rutt makes no allegation that she opposed an employment practice nor that she participated in any investigation against defendants. As Ms. Rutt pleads that defendants failed to consider a reasonable accommodation, I will construe these counts as ADA discrimination claims.

to the complaint, defendants denied her requests without engaging in the interactive process. Ms. Rutt claims that defendants' refusal to engage in the interactive process was due in part to defendants' 100% healed policy. Accordingly, Ms. Rutt has plausibly alleged that defendants failed to make a reasonable accommodation.

      **C.**    **Wrongful Termination Claims**

Finally, Counts XVIII and XIX complain that defendants wrongfully terminated Ms. Rutt in violation of Pennsylvania public policy, but defendants are statutorily immune from liability for state law wrongful termination claims. Pennsylvania statute provides broad immunity to the City of Reading and its employees. 42 Pa.C.S. §§ 8541, 8545. In order to maintain a suit against a Pennsylvania municipality or a municipal employee, the cause of action must fit into one of eight specifically defined exceptions. § 8542(b). Wrongful termination does not fall within any of these exceptions. McNichols v. Commonwealth of Pennsylvania, Dep't of Transp., 804 A.2d 1264, 1267 (Pa.Cmwlth. 2002). Ms. Rutt has not met her burden of showing why defendants are not immune. *See* Mickle v. City of Philadelphia*,* 669 A.2d 520, 522–23 (Pa.Commw.Ct.1996) (burden is on the plaintiff to establish that the tortious conduct comes within one of the exceptions). I will dismiss Counts XVIII and XIX.

**IV.**    **CONCLUSION**

For the foregoing reasons, I will dismiss Counts I, II, III, IV, V, VIII, IX, X, XI, XIII, XIV, XVI, XVIII and XIX with prejudice. Counts VI, VII, XII, XV and XVII may proceed to discovery.

An appropriate order follows.

12